[Crim. No. 3258. Second Appellate District, Division Two.—October 16, 1939.]

THE PEOPLE, Respondent, v. W. A. JOLLEY, Appellant.

Paul W. Davis for Appellant.

Earl Warren, Attorney-General, and Bayard Rhone, Deputy Attorney-General, for Respondent.

WOOD, J.—Defendant was accused of the crime of receiving stolen property in each of three counts of an information. In count I it is charged that on March 20, 1939, defendant received certain automobile tires, the property of William Wilson, Jr.; in count II it is charged that on March 22, 1939, he received certain automobile tires, the property of Wegge-Pelton Motor Company; and in count III it is charged that on the 22d day of March 1939, he received certain automobile tires, the property of E. L. Payne. At a trial before the court without a jury defendant was convicted on counts

I and II and acquitted on count III. He appeals from the judgment and from the order denying his motion for a new trial.

Defendant now contends that the evidence is insufficient to justify the conviction. It was shown in evidence that defendant lived at 3900 Elma Road in the city of Pasadena, where he had resided with his wife and two children for approximately two years. The home consisted of a dwelling house and a two-car garage on the rear of a lot of average size. Defendant was on the dates charged in the information and had been for several years in the used tire business, principally regrooving smooth tires, which he conducted at a downtown location, but he had since occupying the home premises kept a stock of old tires in the garage, which he used for storage purposes. He also used the garage for storing tools and household goods but did not use it for housing his automobile. On the day of his arrest there were on the premises, besides a number of hub-caps and automobile tools, 94 used tires of which 20 appeared to have been used less than 5,000 miles. The tires referred to in the information were found on the premises.

A brother of defendant, Vance Jolley, was also in the used tire business and he made use of defendant's place of business to receive telephone calls although he was working for himself. Vance Jolley was accustomed to buy tires from various used-car lots and service stations and at times stored them at defendant's place of business.

On March 20, 1939, Vance Jolley and one Jack Hurley, both of whom had been formerly employed by defendant, took a stolen car to the residence of defendant and on the driveway near the garage they removed the tires from the stolen car and replaced them with old tires taken from the stock in the garage. Thereafter they drove the stolen car away and abandoned it. On the following day similar operations were repeated by the same parties, the tires being taken from another stolen car. The tires taken from these two stolen cars form the basis of the charges contained in counts I and II. On March 22, 1939, Vance Jolley, Jack Hurley and one Jay Rhodes drove another stolen car into the driveway of the residence of defendant and removed the tires from it but before they had stored the tires they were apprehended by police officers. No evidence appears in the record that on

any other occasions stolen cars or tires were brought to defendant's residence. Defendant was not at home at the time the cars were brought to his residence by Vance Jolley and his two companions. When defendant returned home for dinner on March 22d at his customary hour he was arrested and taken to the police station. He denied any knowledge of the criminal activities of Vance Jolley and denied knowledge of the presence of stolen tires on his property. Vance Jolley and Hurley both testified that defendant did not have any complicity in their criminal actions and did not know that the cars were stolen.

█ Respondent relies upon the rule that the proof of possession of stolen property together with a showing of suspicious circumstances is sufficient to justify a conviction of the crime of receiving stolen property. (*People* v. *Jacobs,* 70 Cal. App. 334 [238 Pac. 770].) Proof of possession of stolen property alone is not sufficient since it must be established that defendant received the property from another with guilty knowledge that the property had been stolen. Although it need not be shown that defendant had physical possession of the property it is essential to show that he had possession either actual or constructive. █ The prosecution doubtless showed suspicious circumstances but it did not establish that defendant had possession of the stolen property, that he exercised dominion or control over it or that he had knowledge of its stolen character. In *Caringella* v. *United States,* 78 Fed. (2d) 563, the Circuit Court of Appeals reversed a conviction on the charge of receiving stolen property where it appeared that the defendant had been the proprietor of a butcher shop for several years, occupying the ground floor of a three-story building, on the third floor of which he lived with his family. In the rear was a garage. Early in the morning bandits seized a truck loaded with 320 cases of eggs and left the truck crew in the country. In about two hours the truck was discovered being unloaded in the garage of the defendant. Officers found the defendant sweeping sawdust in the store in front of the garage. The defendant denied that he knew that the eggs were in his garage and that he knew that they were stolen. In reversing the conviction the court said: ''The burden was on the Government to establish appellant's guilty participation in the crime. This burden might have been overcome by facts from which inferences pointing to

guilt arose. But proof, by facts or inferences, was necessary. In the instant case the Government rested its case upon the asserted inferences arising from the fact that thieves were caught unloading the stolen eggs in appellant's garage. The inference is illogical because the fact—possession—from which the presumption arose, was disproved.''

The record before us discloses that former employees of defendant took three stolen cars to defendant's driveway where they removed the tires and replaced them with old tires taken from the stock in defendant's garage, but it was not shown that defendant had any knowledge of these operations. It appears from his uncontradicted statement that defendant had not been in his storage garage for ten days. The circumstances undoubtedly appear to be suspicious but it cannot be held that they are sufficient to establish possession of stolen property by defendant or knowledge of its stolen character. Proof that stolen property is brought upon one's property by a thief does not establish possession thereof by the owner of the property.

■ In order to complete its case the prosecution relied upon a statement made by George Jolley, a cousin of defendant, and the conduct of defendant in relation thereto. An examination of the circumstances under which this statement was made convinces that the statement, even if it be deemed admissible in evidence, bears so little incriminatory evidence against defendant that it fails to supply the proof necessary to his conviction. George Jolley was before the police on March 23d and subjected to an examination in which he made several statements involving defendant. The following day George Jolley was again before the police in the presence of defendant and the questions and his answers previously made were reread to him and he was asked if his answers previously given were correct. George Jolley did not implicate defendant in the offenses for which he was brought to trial but at one stage in the examination he stated: ''Q. What were they discussing that you overheard? A. I heard Vance Jolley and W. A. discussing about Vance stealing tires from hot cars. Vance had stolen a car and W. A. talked like he didn't like to have the hot stuff there. . . . Q. Has W. A. Jolley ever told you that he was handling hot tires? A. W. A. has told me he was handling hot tires but he has never asked me to handle them . . . '' George Jolley and defendant both testi-

fied that defendant had interrupted this examination and had called George Jolley a "liar". The police stenographer who took notes of the examination testified that defendant questioned the truthfulness of George Jolley's statement. She testified: "Q. By Mr. Davis: Do you recall, in connection with your last statement, that there was some question as to the truthfulness of George's statement raised by this Mr. Jolley? A. Yes, I believe there was." The court admitted in evidence the written statement of George Jolley as an exhibit but ruled that only certain parts marked with a blue pencil should be considered in evidence. Neither the statement in its entirety nor the part admitted in evidence purports to contain all of the conversation that took place at the time of the examination.

The statement of George Jolley was clearly hearsay and could not be deemed admissible in evidence unless accompanied by proof of the conduct of defendant indicating guilt of one or more of the offenses for which he was on trial. In such circumstances it is the conduct of the accused that is admissible in evidence and not the statements of the accuser. (*People* v. *Teshara,* 134 Cal. 542 [66 Pac. 798]; *People* v. *Goltra,* 115 Cal. App. 539 [2 Pac. (2d) 35].) In introducing the instrument containing the statements of George Jolley the prosecution offered no evidence whatever concerning the conduct of defendant at the time George Jolley made the statements. Without evidence of defendant's conduct indicating guilt the statement was inadmissible. The defense presented evidence that defendant did in fact object to the statements of George Jolley and called him a liar. Although police officers testified that defendant did not call George Jolley a liar, the fact remains that the record is barren of any evidence showing that defendant either remained silent or indulged in any conduct indicating his acquiescence in the truth of the statement made by George Jolley. In this connection it is very important to note that the police officers testified that defendant had consistently from the time of his arrest denied knowledge that stolen property was at his residence.

The evidence is insufficient to sustain the conviction. The judgment and order denying a new trial are reversed and a new trial is ordered.

MOORE, P. J., concurring.—I concur.

In a case of the conviction of a party for receiving stolen property, it is necessary only that it be proved by competent evidence that the accused had possession, actual or constructive, of the stolen chattels, together with circumstances from which it might be reasonably inferred that the accused knew of his possession. (*People* v. *Juehling*, 10 Cal. App. (2d) 527 [52 Pac. (2d) 520].) But in this case, the only approach to proof of possession was the presence of the stolen tires in defendant's garage of which he had made no use except to store a stock of old tires, tools and household goods. The brother, Vance, had made use of defendant's place of business as well as of his said garage, but otherwise there is no evidence that defendant in any manner or by any agency knowingly received or sheltered the stolen tires. The only evidence of defendant's possession is the fact of his ownership of the garage; but this was overcome by the large stock of stored tires there and want of proof that he had been inside the garage while the stolen tires were there or that he knew the tires were stolen.

The only accusatory items of evidence are two, *viz.:* (1) The testimony of defendant's wife who heard him, at a time not indicated, tell Vance not to bring his friends around the home; saw Vance and another drive a car to defendant's home in the latter's absence when on her inquiry, Vance said he was servicing a car for a customer; told defendant of said visit of which he disapproved. This tends only to arouse suspicion but it shows no knowledge of defendant that the stolen property was on his premises. (2) The accusatory exhibit which was incompetent. It was merely an *ex parte* statement of a witness, not stenographically taken. When read in defendant's presence, he denied the truth of it. Extrajudicial statements of a witness are in themselves incompetent. Only the contemporary response by the accused to them is material. (*People* v. *McCoy*, 127 Cal. App. 195 [15 Pac. (2d) 543].)

The evidence failed directly or by inference to show guilty knowledge of defendant.

McCOMB, J., Dissenting.—I dissent. In my opinion there was substantial evidence to sustain the conviction.