[Crim. No. 3593.   Second Dist., Div. Three.   Oct. 27, 1942.]

THE PEOPLE, Respondent, v. JOHN LEE, Appellant.

·Nelson & Castro for Appellant.

Earl Warren, Attorney General, and R. S. McLaughlin, Deputy Attorney General, for Respondent.

BISHOP, J. pro tem.—From the judgment which was entered following his conviction upon a charge of incest, and from the order denying his motion for a new trial, the defendant has appealed, contending that the evidence was not sufficient to support the jury's verdict and that there were prejudicial errors committed in the admission of evidence. The evidence, we find, was sufficient to support the verdict but

it was not sufficient to cure the errors made in the course of its admission.

The only evidence that the defendant committed the crime of incest upon his thirteen-year-old daughter Barbara came from her lips, but no corroboration is required in such a case (*People* v. *Hobday,* (1933) 131 Cal.App. 626 [21 P.2d 1008]; *People* v. *Hall,* (1938) 25 Cal.App.2d 336, 339 [77 P.2d 244, 246]) and it is futile to argue on appeal that the testimony is so inherently improbable that it must be disregarded. The defendant has good grounds, however, for arguing that the question of his guilt or innocence must have hung in close balance before the jury, and that it was decided against him because of the errors that were made. His daughter testified that he had committed incest with her; he denied that he had. The defendant had the opportunity to commit the crime at the time when Barbara fixed its happening, but the actual presence in the room of two sleeping boys, and the potential presence of his wife, his brother and his sister-in-law in the adjoining kitchen all made the time appear very inopportune for its commission. It is apparent that the question was a close one, and its answer depended very greatly on Barbara's credibility.

The jury had cause to doubt her credibility. Her story was that her father spent some twenty to twenty-five minutes with her, first being familiar with her, then committing the crime charged. Asked if there was anyone in bed with her at the time other than her father, she replied: "I do not believe so. I would not be sure. No, I do not think there was." With respect to some matters not immediately connected with the crime her testimony was highly incredible, was self-contradictory and was contradicted by the testimony of others. At the time of the accusations, hereinafter to be considered, she appeared as a too eager witness.

Barbara's trustworthiness as a witness was also brought into doubt by her admitted animus toward her father. She testified that she was unjustly treated by her parents, by her father particularly, with respect to her freedom to go out with boys. She would be angry about the injustice for a time, but without flying into a rage about it. A few hours preceding the crime she became angry afresh with her father because, as she explained it, he would not let her go to a show as he had promised. She also testified that this same

evening he twisted her wrist, threw her down on the steps and used "the ruler across the bottom of her anatomy," and while the spanking did not make her angry, the twisting of the wrist did. From her own testimony, then, the jury might well have believed that as she went to bed instead of to the movies that evening of January 16 she was resentfully angry with her father, and that her anger carried over to set in motion the accusations which followed.

In at least two particulars errors were committed of so prejudicial a nature that the judgment must be reversed. ▮▮▮▮ One had to do with the admission of accusations made against the defendant prior to the filing of the information against him. It is the established law that it is improper to disclose to the jury the fact that such accusations were made unless the conduct of the accused in the face of the accusations constitutes an admission of guilt "by express assent, by his silence or by acts or by conduct on his part which could be fairly construed as assent." (*People* v. *Wong Loung,* (1911) 159 Cal. 520, 531 [114 P. 829, 834].) In those cases where the only conduct of the defendant in the face of the accusations is to deny them, then "The district attorney should not have offered this evidence, knowing, as he did, that [the defendant] had not remained silent under the accusation, but had repelled it at the time it was made." (*People* v. *Teshara,* (1901) 134 Cal. 542, 544 [66 P. 798, 799].) See further: *People* v. *Goltra,* (1931) 115 Cal.App. 539 [2 P.2d 35], and its quotations on pages 550 and 551.

The People do not contend for a different principle of law but would escape its application by claiming that the appellant stood mute when accused by his daughter. Were this so (and as we shall see the evidence does not support the claim) it would not correct the error committed in receiving, over timely and proper objections, the account of the accusations made previous to the occasion when the daughter was present. The interview between the district attorney and the defendant was in the presence of the court reporter of the San Luis Obispo Superior Court and was by him written out in the form of a statement. This statement was introduced into evidence and parts of its read to the jury by the district attorney. We quote the pertinent portions which were read to the jury: "Your daughter has been in here and says that you have been committing acts of sexual intercourse with her, and the last act you had was last Monday at 10:30. A. My

daughter? Q. Yes, your daughter. And the one before that was on the 17th, and you have been doing this for a long time. Now, what have you got to say about it? A. I never." "Q. You never? A. No, sir. Q. We understand you have been carrying on, and we will have her examined by a doctor and we have absolute proof and you better come through with it. A. Man, I would not do nothing like that——" "Q. She said you have been having intercourse with her since before she could remember. You know that is the truth. A. No." "Q. No, she said—she said that is what happened. How about it, Mr.? When did this start? I want the truth and I am not going to—how about it? You have been having intercourse with her two or three times every week for a long time. A. No, I have not. Q. Do you mean to say your little girl would sit there and tremble and with tears in her eyes and make that kind of a statement if it was not true? A. I do not know. Q. Do you claim anybody else has molested your daughter? A. I could not say as to that. I don't know. Q. You have no information of any kind or character to indicate she had intercourse with anyone else, isn't that true? A. Yes, that is true." "Q. Listen, I want you to tell me the truth, and I do not want anything but the truth, because that is what I am after. You know perfectly well that is what you did and no girl in her right mind would first admit that any man had intercourse with her, and secondly, that her father did. You know that? A. No, it don't stand to reason, it don't, I will admit. Q. What is the matter with you? A. The matter with me? What do you mean? Q. I mean because you have had sexual intercourse with her, and she is only 13 years of age and you have been saying that she was your wife and abusing her. Why don't you come through and tell the truth? You know perfectly well it is true. If you want her to get on the stand and testify under oath, that is what we will do. Or you can save what little speck of manhood you have left, if you have any, and tell the truth about it. What are you going to do? A. Let her prove it. Q. Let her prove it. OK, if that is the way you want it. A. How in the hell am I going to admit to such a thing as that? Q. Because you did it." "Q. Do you want to face your daughter? A. I wouldn't care." "Q. You don't appear to be proud of her, if that is what you did, and she says you did. She says you have been pulling this stuff off for years.

I will let you face her. We will take her over there and let you face her. What explanation, what conceivable explanation have you? A. In what way do you mean? Q. What explanation do you have for a girl making a statement that you have been having intercourse with her for so long? A. I really don't know. Q. That is a terrible thing to say. A. I know it is a terrible thing to say." "Q. How can a girl make such a statement? Have you abused her so that she is mad at you? A. No, I never did." "Q. All I can say, you better make your peace with yourself, because if this girl sticks to the story in your presence, we are going to prosecute you to the limit of the law and there won't be anything to do. The best way you can do, if it is true, is to realize what you have done and stand up before the Court and say, 'I have got it coming.' That is all there is to it, because if you want—— A. Would you want to admit to something you did not do? Q. If it was not true, of course not, but I am telling you that I cannot conceive it is not true and we will have her there at 12:00 o'clock, or about that time, to face you."

It seems clear to us that the repeated objections of the defendant (not quoted by us) that the accusations made were not admitted by him when he heard them so they should not be admitted into evidence for the jury to hear, were well taken, and the repeated rulings of the trial court such as this one: "the statement will be considered by the jury, and they will give it what weight they deem it entitled to" were prejudicially erroneous. "It is not the declaration made in the presence of a defendant that can be taken as evidence against him; it is only his conduct in connection with the declaration that can be looked to for evidence of guilt, and if he flatly denies the charge there can be no evidence in this of guilt, and therefore the whole matter should be excluded, lest the jury may infer from its being admitted that they are warranted in treating it as evidence against the defendant." (*People* v. *Turner*, (1905) 1 Cal.App. 420, 422 [82 P. 397, 398].) The error was the more serious in this case because the person making the accusations was the district attorney, the law enforcement officer of the county, and he was insistent that the daughter's story could not be doubted; that he believed it beyond a doubt.

Before reading from the subsequent statement which, ac-

cording to the court reporter, was "a true and correct copy of the transcription of his notes," the district attorney was sworn as a witness and testified that in addition to the parties present at the first interview (the district attorney, the court reporter, the defendant and one Lee Knight) Barbara and her mother were in attendance. Then over the defendant's renewed objection he read: "Q. Well, Mr. Lee (addressing the defendant), I talked to you this morning, and here is your girl and here is your wife. I have approached this matter from every conceivable angle. The girl maintains the accusation. How about it? Barbara Lee: Yes, daddy, you know you did it, and time over and over again, you just cannot deny it because you know you have. Mr. Brazil: Q. How about it? That is your daughter telling you, and she is making a pretty straight accusation. Can you look her in the eye and tell her—— Barbara Lee: Because he knows he did it—— Mr. Brazil: A 13 year old girl, your own flesh and blood, and she is making a strong accusation—— The Defendant: Listen, am I entitled to any legal—— Mr. Brazil: Look her in the eye, sir, and tell your daughter you did not do it. I challenge you to do that. A. Barbara, I never did—— Barbara Lee: You know you have, and you did it over and over again, and you know you have. Mr. Brazil: Q. You cannot tell me you didn't; with this girl challenging you—— The Defendant: What do you want me to do? Mr. Brazil: Q. Act like a man and deny it. Look at her. Do you think that is a story, the way she is talking? Would she dare to make a false accusation the way she is doing it now? (No reply). What do you think of it, Mrs. Lee?" The defendant made an objection "to that statement, 'no reply,' on the ground that it calls for the opinion and conclusion of the witness," to which the witness, the district attorney, replied: "It is here."

As we understand the People's position on appeal they admit that throughout the first interview the defendant consistently denied the charges made, but relying upon the matters we have quoted from the second interview they state "he stood mute." Again we call attention to the fact that there was no witness who testified concerning the defendant's conduct. The court reporter who took notes at the interview was a witness at the trial and so was the district attorney but neither stated how it was that the defendant failed to finish

several of his sentences. Unless his failure to complete his sentences was shown to be due to his own hesitancy, rather than interruptions by the district attorney and Barbara, no inference of acquiescence on the defendant's part is justified. ▪ Whatever local arrangement may have been made with the court reporter to take down in shorthand and to transcribe interviews between the district attorney and those he suspected of having committed crimes, his activities on such occasions were not a part of his official duties as a court reporter and his transcription of his notes has no official status. (Code Civ. Proc., secs. 269 et seq.) ▪ The words ''no reply'' in · the statement being read by the district attorney were therefore inadmissible as hearsay, a ground of the defendant's objection to the use of the statement. If the defendant made no reply, when given an opportunity to do so, someone present should have so testified, but no one did.

The effect upon the jury of the reading of this statement is to be gauged in the light of these remarks: ''THE COURT: I am permitting this statement to come in to show the conduct, acts and statements under arrest for crime. It is admissible and the jury will give it what weight that they feel it warrants. MR. BRAZIL: May I continue reading it, then? MR. CASTRO: It is only admissible for the purpose of an admission. THE COURT: No, conduct, acts and statements of a person under arrest.''

▪ We are further of the opinion that an error was made with regard to another subject. A doctor who had made a physical examination of Barbara, testified that her private parts showed that there had been a penetration, but whether it had been by a penis or some object used in masturbation could not be said; to answer that question one would have to see the act itself. That this examination of Barbara was not limited to her physical condition appears from his affirmative answer to this question, put to him by the district attorney: ''You examined the girl as to her appearance and manner and all of those things?'' Then this question was asked: ''And with reference to this particular case, based upon your physical examination and history, and all facts upon which you based an opinion, did you have an opinion at that time in your own mind as to whether this enlargement of the vaginal tract was the result of sexual intercourse or the result of some other act?'' Following a ''yes'' answer the doctor was permitted, over the defendant's objection, to give it as his opin-

ion "that the dilatation of the genitalia was due to sexual intercourse and not masturbation."

The doctor's opinion should not have been received. It was not a professional opinion, for he had stated the obvious, that a physical examination could not determine the cause of the condition seen. In part, at least, his opinion was based on his conclusion that Barbara was to be believed, a matter not the subject of expert testimony. What other elements were included in "all the facts upon which you based an opinion" we do not know, but none of them were made to appear to be facts upon which a professional opinion was proper. There was evidence that Barbara was familiar with the practice of masturbation. In the premises, in this case upon which so much depends upon Barbara's credibility, the error cannot be said to be anything other than prejudicial.

█ It was misconduct for the district attorney to ask repeated questions in the face of repeated adverse rulings concerning the immaterial matter of whether or not the two small nephews of the defendant had been given wine to drink. Concerning other contentions of error we deem it unnecessary to speak; the necessity of a new trial already appears.

The judgment appealed from is reversed and the cause remanded for a new trial. The appeal from the order denying a new trial having become moot, is dismissed.

Schauer, P. J., and Shinn, J., concurred.